## INTERNATIONAL ELECTRIC CO. v. INTERNATIONAL ELECTRIC FENCE CO. et al.

### No. 12270.

United States Court of Appeals
Ninth Circuit.

April 14, 1950.

William A. Snow, Chicago, Illinois, for appellant.

Geo. H. Boldt, Metzger, Blair, Gardner & Boldt, Tacoma, Wash., for appellees.

Before HEALY, BONE and POPE, Circuit Judges.

HEALY, Circuit Judge.

Appellant sued to enjoin appellees from using the trade-mark "international" on electric fencers and allied products, assert-

ing an exclusive right thereto in itself. Appellees, on the basis of the same prior use relied on by appellant, claimed a concurrent right to use the mark in the eleven far western states.[1] The trial court determined that appellees' claim of concurrent right was supported by the weight of the evidence, and it rendered judgment accordingly.

The real actors in this obscure episode, all of whom were witnesses on the trial, are three individuals, Turk, Hughes and Soper. The corporate parties are little more than window dressing. Appellant, an Illinois corporation, was organized by Turk in 1944 and is almost wholly owned by him. The appellee Washington corporation, jointly organized in 1941 by Turk and Hughes, has since 1944 been entirely owned by Hughes.

The trade-mark "International" appears to have been adopted and first used on electric fencers and allied products about the beginning of 1938 by Turk and Soper, who formed an Oregon corporation called International Electric Fence Co. for the distribution and sale of fencers. The venture proving unprofitable, the corporation was abandoned—"allowed," in the language of Soper, "to die on the vine"; whereupon the two men went their separate ways and for some years thereafter carried on business independently of each other. Soper went to Chicago and began to assemble and distribute the devices, using the "International" trade-mark thereon. Turk remained in Vancouver and distributed and sold fencers bearing the trade-mark, some of these fencers being assembled for him by one Good, although later Turk bought his products from Soper. In 1943 Turk, who was at that time still jointly interested with Hughes in the appellee corporation, went to Chicago and formed a partnership with Soper in the electric fencer business. In 1944 he ac-

quired Soper's interest in the partnership, Soper moving to Minneapolis. Turk then organized appellant corporation and transferred his fencer business to it. About the same time he sold to Hughes his half of the stock in the appellee corporation.

It seems to be Turk's position that when the original International Electric Fence Co. died of inanition the "International" trade-mark it had developed and used became the exclusive property of Soper. Accordingly, he claims that when, in 1941, he transferred his electric fencer business and goodwill to the appellee corporation, organized and jointly owned by himself and Hughes, that corporation obtained no rights in the trade-mark for the simple reason that Turk himself had no trade-mark rights to convey. His theory is, further, that when he acquired Soper's partnership interest in Chicago in 1944 he acquired exclusive rights in the trade-mark, which rights he thereafter transferred to appellant. This view of the matter does not appear to be supported by any satisfactory evidence. Soper's testimony, moreover, is to the contrary. Soper indicates that he neither had nor at any time claimed to have any exclusive right to the use of the trade-mark. He says that Turk and Hughes and their Washington corporation had equal rights with himself in the use of the "International" trade-mark. The court found, and we think the finding is fully supported, that at the time Turk conveyed his business and goodwill to the appellee corporation he had a right to use this trade-mark, and that he parted with the right in favor of the corporation of which Hughes is now the sole owner. We may assume, as the trial court did, that Turk and his corporation acquired from Soper the latter's interest in the mark; but the ownership of that interest does not exclude appellee from its use of the mark.

Judgment affirmed.

---

1. Both parties had sought registration of the mark. Appellees' application is still pending. That of appellant was granted, and the latter relied on the registration as establishing a prima facie case.